This is a matter of Dianne Peecher v. Community Unit District No. 16, 4080939. Counsel, please. Thank you, Your Honor. Please support. My name is Michael Brando. I'm here on behalf of the school district. This case here is typically brief. Basically, it's a worthless compensation case. It's been transferred to this division. While we're here, the case was tried before the commission. The commission entered an award. There was a dispute over what the award entailed. Ms. Peecher's attorney filed an application for an entry of a judgment in the circuit court. Circuit court found on their behalf. The issue comes down to this particular debrief. Out-of-pocket expenses. Even though it's a very minor amount, my client thought it's the principle of the thing. They thought that the plaintiff in this case did not bear the burden of proof of showing how much they paid out of their pocket. If you took a look at the order from the commission, the commission stated in the finding that the respondent, the petitioner said she paid $672 out of pocket. However, it's unclear from the bill submitted whether that figure is correct or not. That's the only finding as to how much the bills were in the commission's system. We don't know if that's right or wrong. What was the number again? $672.34. As I said, the amount is very minor, but my client insists that we go forward. That's the finding. You go to the order regarding the bill. It says, Respondents paid the petitioner the expenses listed in certain exhibits as well as any out-of-pocket expenses paid by the petitioner. To our contention, there was no proof whatsoever how much was actually paid. Why would that be in the order? Why would they put in pay and out-of-pocket medical expenses? In my opinion, it's a sloppy order. Plain and simple. They should have said specifically how much it was. You're talking about the commission's order? Do you have a right to ask them for specific findings? Both parties, I assume, have interpreted the order a different way apparently. That doesn't mean it's what they did. If you thought it wasn't any good or couldn't follow it, you could have asked. I thought it was quite clear, based upon them saying it's unclear whether or not the $600 and some odd dollars were supported by the bills, that there was no need to clarify. If I would have thought differently, if I would have thought it through, we probably wouldn't be here today. I'm totally confused. I should show you the numbers that I have been working with trying to figure out what they did. My understanding was that they said there were $7,887.19 in medical bills. But there was a stipulation that there were $8,915.45. So even if you had the $672 to the $78.87, you have $85.59. I was going to mention that also a little later. The petitioner, Ms. Peacher, testified what she paid out of her pocket. The commission says it's not supported by the bills. But Ms. Peacher also stipulated that the school district paid over $1,000 more than what the bills were. So of course, our position is, why do we owe this out-of-pocket expenses when we've already overpaid it? Well, my question is, I'm not sure why you're here. I'm not sure how this went before the circuit court if they were asking for more than what the commission awarded. That should have gone back to the commission. I'm not disagreeing with you. It should have gone back to the commission. It should have been remanded. But they didn't remand it. What they did, they entered an order. Saying, basically, the order, the long and short of the circuit court's order requires us to pay the out-of-pocket expenses. The rest of the order, I mean, it's a different dollar amount, but it's out-of-pocket expenses. I don't see where the commission ordered. The commission itself is clear on the amount, and second of all, how it's supported one way or the other. By their own findings and stipulation, we paid more money for the bills than the bills were. I realize this isn't an issue, but when I was doing these calculations, it said that you had paid $4,016.73 on the PPD award. But the actual award was $5,954.51. Was that $1,937 ever paid? I'm confused by your numbers, but I'll try to explain that. It's complicated because the employer paid Ms. Peacher money when she was off work and paid all these bills. The decision initially, when it was heard, they found that it was not a compensable accident. It then went up before the commission. The commission reversed it, gave an award, a percentage award, but then realized that the school district overpaid on a lot of the other issues. The bottom line is, the whole dispute is the $670. That's it, plain and simple. I mean, you've read, you've heard all about how they stipulated we paid more than the bills were. I don't know how they get around this, but they did. Second of all, it's unclear when the commission finds that there's insufficient evidence to state the amount of out-of-pocket expenses. Saying it's not supported by the bills. I don't see, there's not a finding by the commission. I don't see how the circuit court can make a finding based upon that. If they did, I think it was improper. It has to be reversed or remanded. Counsel, when you said a few moments ago the case should have been remanded, do you mean that the trial judge should have remanded it back to the commission? Is that what you're talking about? That probably would have been the best way to handle it, because a determination should have been made about the out-of-pocket expenses. Isn't there any time limitation for the commission to review a decision that's made? Right, right. The commission made its decision, what, in 2006? And this didn't get in front of the trial court until late October, until early October 2008. After the commission renders the decision. There's 20 days to file the appeal. And once they make the decision, the circuit court as well can just file it to remand it down. There's not a time constraint. There's not a time reason why it couldn't have been remanded. Quite frankly, I haven't heard it for a long time. So the trial court in this case could have said, I don't understand this commission order either, so I'm going to remand it back to the commission to tell us what they meant by out-of-pocket expenses or how much, I mean, out-of-pocket expenses were. Yes, I think they could have. Well, that was a workers' compensation appeal with respect to this case. Is that correct? Yes, it was. And what was the issue on the appeal? The underlying case, because it went up, okay. The issue was accident initially. There was a disputed accident. I would be incorrect if I said the workers' compensation appeal of the original case from the commission's decision was as to causal connection only. Well, yes and no. Initially, the appeal was the credit that we may be entitled to. Pardon me? And on the underlying case, besides the causal connection, there's the issue of the credit. Because the company paid for which was off work for an extended period of time and paid all these bills, claiming some of these bills aren't related because of pre-existing condition. Anyway, that decision came down. The commission reversed it. It made the initial award. It went up to the circuit court that affirmed it. I didn't see much of the appellate court on that issue, too. And they appealed the circuit court. We're only here now because trying to interpret the out-of-pocket expense provision was never addressed by any of the other courts or any of the other parties. So I don't think they met their verdict of proof plain and simple. Any more questions? Thank you. We don't have time, everybody. Counsel, please. Please, the court and counsel. Unfortunately, sometimes in workers' compensation cases, we don't detail things as greatly as they do in a circuit court case. Well, you have a right to ask the commission to support the reason for its decision. Can you? Can you have that right? Your Honor, I'll plead ignorant. I don't believe that I have a right to go back to the commission. In the Workers' Compensation Act, then you certainly have a right to do that. And you didn't do it. I didn't do that because when we got the decision from the commission, I thought that it was appropriate. They filed an appeal. I never thought that there was an issue with regard to the medical bills. But the medical bills that they paid does not necessarily mean that that encompasses not only the bills that I had, but as many times, the client never gets these bills. They're paid directly by the insurance company. How can we determine what the commission said with respect to the medical bills? Well, counsel in his brief says that this was not reflected in the medical bills by some evidence. However, Diane testified that she paid these two bills. One to Dr. Russell and one to Springfield Clinic. The documents submitted for the bills shows that Springfield Clinic bill was $1,065. And the insurance paid a quarter of that. And the remaining portion was paid by Diane Teacher, $529. That's in the record. I'm sure you read the appellant's reply brief. Yes. And he talks about, with respect to the out-of-pocket expenses, if in fact the claimant had met a burden on this issue, the commission would have stated in its decision the amount of the out-of-pocket expenses. However, quite the opposite is stated in the records. Well, correct. No, I think they said the out-of-pocket expenses, and they were not specific with regard to it. But those were the expenses that she had. All right. Let's go to the next paragraph, whether they're correct or not correct. The commission found that the petitioner testified she paid medical bills of $731.04. This was not reflected in the medical bill submitted into evidence. On the issue of proof, the commission further points out that the petitioner also testified she paid medical bills of $672.34. However, it's stated clearly by the commission's decision, it is unclear from all the bills submitted by the petitioner whether this figure was correct or not. Well, I don't know where the 731 came in, but the record indicates that she paid $672.34. And the commission, I guess it could have been more specific, but remember when the commission... Let me ask you one other question. I disagree with it being your responsibility. He also asserts that if the commission who heard the testimony, examined the exhibits, was unable to determine what the correct amount of out-of-pocket expense was, then it is clear the petitioner did not carry her burden of proof on that issue. The commission didn't hear any testimony. The commission's decision was based solely on briefs filed by each of the parties. They heard no testimony with regard to just the cold record, which is what you have, and the record says that she paid this much money. I understand that, but she had an opportunity to do it at the arbitration level. Well, yeah, and we did. She testified that these were the bills. We submitted bills that shows that the petitioner in Springfield Clinic, that the insurance company paid a portion, and the balance of $529 was due by the petitioner, and she was there. And she testified with regard to these. They didn't object to her testimony in that, saying, oh, no, that's not true. That should have been part of the bills that we paid. But they didn't do that. They let this go. Well, but, Mr. Smith, how do you reconcile the fact that the petitioner submitted medical expenses totaling $78.87, and she paid medical bills of $672, and the parties stipulated respondents entitled to a credit of $89.15? I mean, the $672 added to $78.87 comes to $85.59, so they overpaid. No, they didn't, because they never presented the bills that they paid. I presented to the commission what bills my client had received. That's not necessarily all the bills that were charged for her, particularly in workers' compensation. The first bills, the ambulance bill, you know, emergency room fee, those are usually paid right away, and I don't have them. I presented the bills that I had that I wasn't sure had been paid. So there were more bills than what I presented there. And of the bills that I presented, we paid $672.34 of the bills. Where did the trial judge come up with the $1,678.48? There's a provision under Section 16 for the assessment of attorney's fees and costs when you file a Section 19G petition trying to enforce a decision of the commission, because the commission can't enforce their own orders, you have to go to circuit court. So that additional sum is based upon the cost to occur, and there's a provision for attorney's fees if you fail to do so. The $1,678.48, that refers only to attorney fees? Your Honor, I have to take a look at the – that would also include interest on the decision. No, I apologize, Your Honor. The amount of $1,678.48 is the amount of the award made by the commission, which includes the – for the permanency award and for the out-of-pocket expenses. That's what that adds up to. Tell me again, where did that amount come from, $1,678.48? What is it made of? It is made up of – there was a PPD award. Get your amounts, get your amounts straight. I don't have those amounts right in front of me, but they overpaid on TTD, so they get a credit against the PPD award. Now, the PPD award would have been that $1,678.48 minus the $672.34. That was what the award that was made. Since the award actually was higher than the $1,000, but because they overpaid on TTD, they're entitled to a credit for that against the permanent partial disability award. That's where that – Wait a minute, you're losing me. So this judgment of $1,678.48 was at least in part because there had been a TTD overpayment? Well, yes, because – and I'll just use round numbers. Okay, so then this appeal involves more than just this out-of-pocket medical expense? No, the other side agrees that there was an award made, and that award, and I agree too, had to be reduced by the overpayment of TTD, the permanent partial disability award. For example, if in fact it was a $2,000 payment in TTD in excess of what was due, and the award is actually $3,000 in permanent partial disability, then you subtract the $2,000 overpayment, and they owe $1,000. That's how we arrive at that. They overpaid on TTD, and they put a credit against it for the permanency award. So that amount of $1,600 makes up the permanency award plus the out-of-pocket expense of Diane Feecher. Have I thoroughly confused you? Almost. What's the out-of-pocket expense then as assigned by the trial judge? $672.34. Okay. So the $1,678 is the addition of $672.34 plus the TTD overpayment, or whatever the math was, as set off against PPD. Right. It's a PPD award plus that out-of-pocket expense. That's what that amount applies to. Neither side is arguing about what the amount of the permanency award is after the credit for the TTD. The only issue is this out-of-pocket expense. So this whole appeal then is about the $671.40. Correct. And you say that that amount is the correct amount. That's the correct amount. He says it's not because we can't tell because the commission's order doesn't say. That's what he's saying is because the commission wasn't specific, but I say that the record supports that award, which the trial court, circuit court in this case, heard the arguments and the information and said, no, that was correct. Okay. How did the trial court make the determination that the amount of out-of-pocket expenses that would be reimbursed was $671.40? Could you give us the math on that, on the computation of that? The math would be the testimony of Diane Peter at the trial court indicating that those are the bills that she paid. I thought that was 672.34. Oh, I'm sorry. That's what I thought you said, too. No, it looks like to me the order says. No, I'm looking at the attorney fees. Okay, so the trial court awarded $672.34 in out-of-pocket. Correct, along with the permanency award. And that's based upon the testimony. That's based upon the testimony and the documents in the record. The additional amount that makes up that $1,600 is the actual award made by the commission. I believe the record reflects that based upon the testimony and documents that Diane Peter paid, the 672.43 out-of-her-pocket, and the trial court saw this and heard the arguments and entered an order, and I would ask the court to just simply affirm this. When did you file in the circuit court? How long after the commission issued its decision? Well, it was after the commission issued its decision, the school district appealed that decision. Then it went from there to the circuit court, then up to the appellate court. And then after the appellate court affirmed that, I basically made a demand for the money, and then they didn't pay that, so I filed the Section 19G, which is the method used to enforce judgments. It was sometime in the fall of 2008 because the decision was made shortly thereafter on November 17th. I don't have the exact date that it was filed. So I'm still troubled by the fact that we're here confused by what the commission did, but we're not here on a direct appeal. We're here on a 19G. It doesn't seem to me like a 19G is the place to be having this discussion. We had the appeal with the workers' compensation panel, where we argued everything that we're arguing about the nature and extent, whether there's causal connection, whether there was an accident involved. All those issues in that panel affirmed the decision of the commission. And that panel did not address this issue. It just simply affirmed the decision. Wasn't it incumbent on one of you to ask for a clarification of this opinion that talks about different figures and lack of proof and then awards out of pocket? Your Honor, as I understand the act, once the commission renders its decision, unlike an arbitrator, I do not have a right to go and ask them for clarification. My only avenue is to go to the circuit court, which is what they did. So after they went to the circuit court, we had these arguments then. I assumed all along that there was an agreement with regard to these, because there was testimony in court by Diane Feecher. I paid these bills, no objection with regard to what they paid. It was only after the appellate court, the compensation division, affirmed the decision of the commission that that issue was raised by the school district. So did they forfeit their right to object to this? I don't know if that's the correct way to do it, to say that they forfeited, but they certainly didn't raise it in any specific way beforehand. And I'm always defending the case up until I went to the circuit court to confirm the decision and get the award. At that point in time, the circuit court had the record before them and made that entry. If there's nothing else, I... I still have a question. If you know, then you know. Why did Defendant tender a check in the amount of $949.43? Is that the TPP thing? That's the difference. That's what they calculated. And I agree with that amount. I'm not disputing that amount. And so, apparently they offered that. You're not disputing that. And then their position is they owe nothing, in spite of the order, on the medical expense, out-of-pocket. Right. That's the issue that's here. So, you're not contesting that you didn't get a payment of $1,937 in TPP? No. Since I didn't accept the tender because of their refusal to pay the full tender, I didn't accept anything in that. And so, by the time we got to court, I added the interest into that amount of the award, which, under the act, I'm entitled to, plus the out-of-pocket expense to come up with that number. They've never disputed the payment of the TPP differential. We're not. We agree with that number. Thank you. Excuse everyone. Thank you. I'll just be very quick. The judgment that entered the circuit court for $1,600 and some-odd, that includes interest on top of the $1,500 and some-odd, just in case you're unsure. Counsel for Ms. Peacher argued, and you stated, that we overpaid the medical expenses and we were given a credit against the PTD. I don't know how you can take that position and say we owe out-of-pocket expenses for medical. I didn't hear him argue that they were overpaid on medical expenses. If I may, the record itself stipulated an overpayment of medical. The stipulated respondent paid $8,000. Stipulated where? In the findings of the commission on the top of the page. On the fourth page, the petitioner submitted expenses of $7,887.19. Further in the paragraph, they stipulated we're entitled to a credit of $8,915 in medical expenses. By their own admission, we paid more money for the bills. If they're trying to say that they didn't submit all the medical bills, everything's in dispute when you have an accident. Plain and simple. You can't come in later and say, well, it's $8,000-some-900 for other bills. It's not involuntary. All the bills were in dispute. So why then did the commission order the respondent to pay the petitioner the medical expenses presented as well as any out-of-pocket medical expenses paid by the petitioner? And if you don't know, why wasn't that appealed and didn't you forfeit it at this stage? No, because there wasn't any proof of any out-of-pocket payment. The commission, in their own findings, mentioned that specifically. The petitioner testified that she paid these out-of-pocket expenses, but they said they couldn't find any proof. They actually said the petitioner testified she paid medical bills of $7,3104, but this is not reflected in the medical bills, and apparently it is. And then they said she testified she paid bills of $672.34 out-of-pocket. However, it's unclear from the bills submitted whether this figure is correct. And then, in its order, orders responded to pay the petitioner as well as any out-of-pocket medical expenses. Didn't you have an obligation to raise that in the appeal? And because you did not, is it now not forfeited? Well, the bills that were submitted did not indicate any payments by the petitioner. They indicated there was a balance due and owing still. So the bills themselves that they submitted, as records indicated, there weren't payments. So it contradicts their own testimony. Thank you, counsel. The court will take the matter under advisement.